UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRANDIE NANHEE KIM,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>CAROLYN W. COLVIN,<br>Acting Commissioner of Social Security,<br><br>　　　　　　Defendant. | Case No. CV 13-01841-JEM<br><br>MEMORANDUM OPINION AND ORDER REVERSING DECISION OF THE COMMISSIONER OF SOCIAL SECURITY |

## PROCEEDINGS

On March 14, 2013, Brandie Nanhee Kim ("Plaintiff" or "Claimant") filed a complaint seeking review of the decision by the Commissioner of Social Security ("Commissioner") denying Plaintiff's application for Social Security Disability Insurance benefits. The Commissioner filed an Answer on July 3, 2013. On October 28, 2013, the parties filed a Joint Stipulation ("JS"). The matter is now ready for decision.

Pursuant to 28 U.S.C. § 636(c), both parties consented to proceed before this Magistrate Judge. After reviewing the pleadings, transcripts, and administrative record ("AR"), the Court concludes that the Commissioner's decision must be reversed and this case remanded for further proceedings in accordance with this Memorandum Opinion and Order and with law.

**BACKGROUND**

Plaintiff is a 39-year-old female who applied for Social Security Disability Insurance benefits on April 28, 2010. (AR 23.) The ALJ determined that Plaintiff has not engaged in substantial gainful activity since March 20, 2009, the alleged onset date of her disability. (AR 25.)

Plaintiff's claim was denied initially on September 21, 2010. (AR 23.) Plaintiff filed a timely request for hearing, which was held before Administrative Law Judge ("ALJ") Lisa D. Thompson on June 30, 2011, in West Los Angeles, California. (AR 23) Claimant appeared and testified at the hearing and was represented by counsel. (AR 23.) Vocational expert ("VE") Aida Y. Worthington also appeared and testified at the hearing. (AR 23.)

The ALJ issued an unfavorable decision on July 25, 2011. (AR 23-33.) The Appeals Council denied review on January 22, 2013. (AR 1-4.)

**DISPUTED ISSUES**

As reflected in the Joint Stipulation, Plaintiff raises the following disputed issues as grounds for reversal and remand:

1. Whether the ALJ provided specific and legitimate reasons for rejecting the opinions of Edward Carden, M.D., and David Edelman, M.D.

2. Whether the ALJ provided clear and convincing reasons for rejecting Brandie Kim's testimony.

**STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), this Court reviews the ALJ's decision to determine whether the ALJ's findings are supported by substantial evidence and free of legal error. Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996); see also DeLorme v. Sullivan, 924 F.2d 841, 846 (9th Cir. 1991) (ALJ's disability determination must be supported by substantial evidence and based on the proper legal standards).

Substantial evidence means "'more than a mere scintilla,' but less than a preponderance." Saelee v. Chater, 94 F.3d 520, 521-22 (9th Cir. 1996) (quoting

Richardson v. Perales, 402 U.S. 389, 401 (1971)). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson, 402 U.S. at 401 (internal quotation marks and citation omitted).

This Court must review the record as a whole and consider adverse as well as supporting evidence. Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006). Where evidence is susceptible to more than one rational interpretation, the ALJ's decision must be upheld. Morgan v. Comm'r of the Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999). "However, a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'" Robbins, 466 F.3d at 882 (quoting Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989)); see also Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007).

## THE SEQUENTIAL EVALUATION

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or . . . can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Commissioner has established a five-step sequential process to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920.

The first step is to determine whether the claimant is presently engaging in substantial gainful activity. Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007). If the claimant is engaging in substantial gainful activity, disability benefits will be denied. Bowen v. Yuckert, 482 U.S. 137, 140 (1987). Second, the ALJ must determine whether the claimant has a severe impairment or combination of impairments. Parra, 481 F.3d at 746. An impairment is not severe if it does not significantly limit the claimant's ability to work. Smolen, 80 F.3d at 1290. Third, the ALJ must determine whether the impairment is listed, or equivalent to an impairment listed, in 20 C.F.R. Pt. 404, Subpt. P, Appendix I of the regulations. Parra, 481 F.3d at 746. If the impairment meets or equals one of the

listed impairments, the claimant is presumptively disabled. Bowen v. Yuckert, 482 U.S. at 141. Fourth, the ALJ must determine whether the impairment prevents the claimant from doing past relevant work. Pinto v. Massanari, 249 F.3d 840, 844-45 (9th Cir. 2001).

Before making the step four determination, the ALJ first must determine the claimant's residual functional capacity ("RFC"). 20 C.F.R. § 416.920(e). Residual functional capacity ("RFC") is "the most [one] can still do despite [his or her] limitations" and represents an assessment "based on all the relevant evidence." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The RFC must consider all of the claimant's impairments, including those that are not severe. 20 C.F.R. §§ 416.920(e), 416.945(a)(2); Social Security Ruling ("SSR") 96-8p.

If the claimant cannot perform his or her past relevant work or has no past relevant work, the ALJ proceeds to the fifth step and must determine whether the impairment prevents the claimant from performing any other substantial gainful activity. Moore v. Apfel, 216 F.3d 864, 869 (9th Cir. 2000). The claimant bears the burden of proving steps one through four, consistent with the general rule that at all times the burden is on the claimant to establish his or her entitlement to benefits. Parra, 481 F.3d at 746. Once this prima facie case is established by the claimant, the burden shifts to the Commissioner to show that the claimant may perform other gainful activity. Lounsburry v. Barnhart, 468 F.3d 1111, 1114 (9th Cir. 2006). To support a finding that a claimant is not disabled at step five, the Commissioner must provide evidence demonstrating that other work exists in significant numbers in the national economy that the claimant can do, given his or her RFC, age, education, and work experience. 20 C.F.R. § 416.912(g). If the Commissioner cannot meet this burden, then the claimant is disabled and entitled to benefits. Id.

## THE ALJ DECISION

In this case, the ALJ determined at step one of the sequential process that Plaintiff has not engaged in substantial gainful activity since March 20, 2009, the alleged onset date. (AR 25.)

4

At step two, the ALJ determined that Plaintiff has the following severe impairments: complex regional pain syndrome/sympathetically maintained pain syndrome; and depression (20 C.F.R. § 404.1520(c)). (AR 25-26.)

At step three, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments. (AR 26-28.)

The ALJ then found that Plaintiff has the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b) except for the following limitations:

> . . . is able to stand or walk two hours in an eight-hour workday; is able to sit six hours in an eight-hour workday; can occasionally climb ramps and stairs; can occasionally balance; cannot climb ladders, ropes, or scaffolds; cannot kneel or stoop; can frequently grasp, turn, or twist objects with her right upper extremity; can occasionally grasp, turn, or twist objects and handle, finger, or reach with her left upper extremity; cannot push or pull with the left lower extremity; must avoid even moderate exposure to heights and hazardous machinery, etc.; is limited to simple work tasks with simple one to two-step instructions; and may occasionally interact with supervisors, coworkers, and the general public.

(AR 28-31.) In determining this RFC, the ALJ made an adverse credibility determination. (AR 29.)

At step four, the ALJ found that Plaintiff is unable to perform her past relevant work as pharmacy technician and administrative assistant. (AR 31.) At step five, the ALJ found that considering her age, education, work experience, and RFC, Claimant has acquired work skills from past relevant work that are transferable to other occupations with jobs existing in significant numbers in the national economy that Claimant can perform, including appointment clerk. (AR 32.)

Consequently, the ALJ found Claimant not disabled within the meaning of the Social Security Act. (AR 32.)

## DISCUSSION

The ALJ decision must be reversed. Although the Court is skeptical of the work-precluding opinions of Dr. Carden and Dr. Edelman, the ALJ decision fails to provide specific, legitimate reasons supported by substantial evidence for discounting those opinions. The ALJ also failed to develop the record properly regarding Plaintiff's condition of complex regional pain syndrome or in regard to medication side effects. Finally, the ALJ's RFC precludes the alternative work of appointment clerk.

**I.  THE ALJ FAILED TO PROVIDE SPECIFIC LEGITIMATE REASONS FOR DISCOUNTING THE OPINIONS OF DR. CARDEN AND DR. EDELMAN**

Plaintiff contends that the ALJ did not properly consider the medical evidence in rejecting the opinions of Dr. Carden and Dr. Edelman. The Court agrees.

**A.  Relevant Federal Law**

In essence, Plaintiff challenges the ALJ's RFC. A RFC is not a medical determination but an administrative finding or legal decision reserved to the Commissioner based on consideration of all the relevant evidence, including medical evidence, lay witnesses, and subjective symptoms. See SSR 96-5p; 20 C.F.R. § 1527(e). In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record, including medical records, lay evidence, and the effects of symptoms, including pain reasonably attributable to the medical condition. Robbins, 446 F.3d at 883.

In evaluating medical opinions, the case law and regulations distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (non-examining, or consulting, physicians). See 20 C.F.R. §§ 404.1527, 416.927; see also Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). In general, an ALJ must accord special weight to a treating

physician's opinion because a treating physician "is employed to cure and has a greater opportunity to know and observe the patient as an individual." Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989) (citation omitted). If a treating source's opinion on the issues of the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with other substantial evidence in the case record, the ALJ must give it "controlling weight." 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).

Where a treating doctor's opinion is not contradicted by another doctor, it may be rejected only for "clear and convincing" reasons. Lester, 81 F.3d at 830. However, if the treating physician's opinion is contradicted by another doctor, such as an examining physician, the ALJ may reject the treating physician's opinion by providing specific, legitimate reasons, supported by substantial evidence in the record. Lester, 81 F.3d at 830-31; see also Orn, 495 F.3d at 632; Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002). Where a treating physician's opinion is contradicted by an examining professional's opinion, the Commissioner may resolve the conflict by relying on the examining physician's opinion if the examining physician's opinion is supported by different, independent clinical findings. See Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995); Orn, 495 F.3d at 632. Similarly, to reject an uncontradicted opinion of an examining physician, an ALJ must provide clear and convincing reasons. Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005). If an examining physician's opinion is contradicted by another physician's opinion, an ALJ must provide specific and legitimate reasons to reject it. Id. However, "[t]he opinion of a non-examining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician"; such an opinion may serve as substantial evidence only when it is consistent with and supported by other independent evidence in the record. Lester, 81 F.3d at 830-31; Morgan, 169 F.3d at 600.

**B.     Analysis**

The ALJ found that Ms. Kim has the medically determinable severe impairment of "complex regional pain syndrome/sympathetically maintained pain syndrome" (AR 25) but nonetheless found her capable of a limited range of light work. (AR 28.) Plaintiff's primary treating physician, pain management specialist Dr. Edward Carden, provided the initial diagnosis of complex regional pain syndrome as well as subsequent reports and extensive treatment notes, and opined Claimant was not able to work. (AR 29-30, 233-261, 298-308, 327-473.) An examining neurologist, Dr. David Edelman, gave a similar assessment. (AR 30, 324-326.)

Claimant reported that in April 2006, a dog bit her on the right arm, mainly on the elbow, left hand and left wrist. (AR 25.) Her treatment has included nerve blocks, EMGs, X-rays, physical therapy, trigger point injections, chiropractic care, acupuncture and a TENS unit. (AR 25.) An August 26 nerve conduction study showed she had left radial sensory axonopathy. (AR 25.) In March 2009, she began to see Dr. Carden for pain management. (AR 25.) He diagnosed complex regional pain syndrome ("CRPS") with pain in her left arm running down to the elbow and wrist and a positive Tinel sign. (AR 25.) Claimant was given nerve blocks, injections, ketamine infusions, EMGS, X-rays and physical therapy over the next year and obtained some temporary pain relief but the pain always returned. (AR 233-261.)

In February 16, 2010, Dr. Carden issued a letter that stated Plaintiff's CRPS had spread to her leg, making it difficult for her to sit for any reasonable period of time. (AR 29, 242.) Dr. Carden opined that Claimant is "not capable of working . . . due to the fact that she is taking medications that obtunds [clouds] her judgment and her inability to sit for any length of time." (AR 29, 242.) Dr. Carden went on to say that Plaintiff is "not capable of joining and functioning with the workforce in a reasonably productive manner." (AR 242.) In September 2010, Dr. Carden completed a Multiple Impairment Questionnaire which opined that Plaintiff could sit or stand for less than an hour and had to change positions every 10 minutes. (AR 29, 303.) He also found marked limitations

in grasping, turning and twisting objects with the left upper extremity. (AR 29, 304.) He concluded that Plaintiff was incapable of even low stress jobs and would miss work more than three times a month. (AR 30, 306-307.) In June of 2011, Dr. Carden submitted the same Questionnaire with largely the same evaluation. (AR 30, 329-336.) Also, in June 2011, Dr. Edelman, an independent neurologist, gave the same diagnosis, assessed the same limitations, and provided a work-preclusive opinion, noting that Plaintiff's pain would constantly interfere with her attention and concentration, and her depression would contribute to her symptoms and functional limitations. (AR 30, 324-326.) Dr. Carden's opinions are supported by over 180 pages of treatment notes and by Dr. Edelman. A consulting psychiatrist given great weight by the ALJ also found Plaintiff to suffer from a major depressive disorder secondary to a chronic neurological disorder she describes as chronic pain syndrome. (AR 31, 274.)

      The ALJ incorporated in her RFC some of Dr. Carden's findings, particularly regarding Plaintiff's left upper and lower extremities, but rejected Dr. Carden's sitting restriction and work-preclusive opinion. (AR 28.) The ALJ, however, does not say that Dr. Carden's treatment notes are inconsistent with his work-preclusive opinion. Rather, the ALJ dismisses Dr. Carden's work-preclusive opinion, which is based on multiple observations during an extensive treatment relationship, with a single sentence: "The undersigned has assigned little weight to Dr. Carden's opinion as it is inconsistent with <u>other</u> evidence in the record mentioned by the ALJ, including the Claimant's own descriptions of her functional abilities." (AR 30 (emphasis added).) The only contrary <u>medical</u> evidence in the record is the August 2010 opinion of consulting internist, Dr. Homayoun Saeid, M.D. (AR 30, 262-266.) Dr. Saeid found mild tenderness in the left upper extremity with normal range of motion with no signs of radiculopathy. (AR 265, 266.) He opined Claimant was capable of lifting and carrying 50 pounds occasionally and 25 pounds frequently, and could sit/stand/walk six hours in an 8-hour day (AR 266), an RFC largely rejected by the ALJ. (AR 28.) Dr. Saeid offered the

1 opinion that "Claimant's symptomology strongly suggests psychosomatic etiology" and
2 recommended psychiatric care. (AR 266.)
3       The ALJ's reliance on Dr. Saeid's opinion to reject Dr. Carden's opinion is
4 unjustified. Dr. Saeid is an internist, not a neurologist and he saw Plaintiff but once.
5 Moreover, Dr. Saeid did not review any medical records, and his August 2010 report
6 preceded Dr. Carden's September 2010 and June 2011 evaluations. An opinion based
7 on a one-time examination without review of medical records is of questionable value.
8 Reddick v. Chater, 157 F.3d 715, 727 (9th Cir. 1998). The ALJ, moreover, gave little
9 weight to Dr. Edelman's opinion because there was no treating relationship and his
10 opinion was based on a single visit. (AR 30.) By the same logic, little weight is due
11 Dr. Saeid's opinion who also had no treating relationship with Plaintiff and saw Plaintiff
12 but once. The Commissioner's assertion that Dr. Saeid's assessment was a more
13 thorough evaluation of the record is plainly inaccurate.
14       The ALJ's summary dismissal of Dr. Carden's opinion is further weakened by the
15 complete absence of any discussion of CRPS, what it is, what the diagnostic procedures
16 and criteria are and what the appropriate treatment is. There is no analysis offered as to
17 why Dr. Carden's opinion is mistaken other than that Dr. Saeid had a different opinion.
18 The ALJ does not say Dr. Carden's opinion is contradicted by or unsupported by his
19 treatment notes. This is a classic example of not fully developing the record, in this
20 instance by not obtaining an independent neurologist's report. In Social Security cases,
21 the ALJ has a special, independent duty to develop the record fully and fairly and to
22 assure that the claimant's interests are considered. Tonapetyan v. Halter, 242 F.3d
23 1144, 1150 (9th Cir. 2001); Smolen, 80 F.3d at 1288. The ALJ has a basic duty to
24 inform himself about facts relevant to the decision. Heckler v. Campbell, 461 U.S. 458,
25 471 n.1 (1983) (Brennan, J., concurring). The ALJ's duty to develop the record exists
26 even where the claimant is represented by counsel. Tonapetyan, 242 F.3d at 1150.
27 Ambiguous evidence or the ALJ's own finding that the record is inadequate to allow for
28 proper evaluation of the evidence triggers the ALJ's duty to conduct an appropriate

inquiry. Id. Here, the ALJ did not inform himself about CRPS and the absence of any analysis of it left the evidence about it ambiguous and unresolved.

Another error in the ALJ decision is the suggestion of improvement ("significant relief") in Plaintiff's condition which was cited by the ALJ in discounting Plaintiff's credibility and, by extension, Dr. Carden's opinion. (AR 29.) The ALJ references relief from spinal cord stimulation in 2009 and the Commissioner argues relief through medication. (AR 29, 241.) There are treatment notes, however, that indicate only very short term, temporary pain relief that did not last, including 24 hours (AR 260), 5 days (AR 236-238) and 12 hours (AR 241). Thus, Dr. Edelman noted that, despite aggressive treatment in the form of nerve blocks, medications, spinal cord stimulation and ketamine infusion (AR 324), Plaintiff's pain has persisted to the point she cannot sit long enough to do sedentary work. (AR 326.) The ALJ does not mention this finding in her discussion of Dr. Edelman's opinion. (AR 30.) There is no way to read Dr. Carden's extensive notes or Dr. Edelman's report to mean that Plaintiff obtained permanent relief from her pain symptoms. Dr. Carden and Dr. Edelman clearly did not believe that pain management efforts were successful. The ALJ plainly mischaracterized the record. Any assertion of anything other than temporary relief is unsupported by substantial evidence.

Yet another error in the ALJ decision concerns medication side effects. Dr. Carden explicitly noted in his February 16, 2010 letter that Plaintiff cannot work in part because the medications she is taking affect her judgment. (AR 242.) The ALJ never mentions medication side effects. This was error. An ALJ should consider all factors that might have a significant impact on an individual's ability to work, including side effects of medications. SSR 96-7p; Erickson v. Shalala, 9 F.3d 813, 817-18 (9th Cir. 1993) (citing Varney v. Secretary of the HHS, 846 F.2d 581, 585 (9th Cir. 1987), superseded by statute on other grounds, see Bunnell v. Sullivan, 912 F.2d 1149, 1153-54 (9th Cir. 1990)). Medication side effects can be disregarded if unsupported by medical findings, Gallegos v. Astrue, 2010 WL 330242*2-*3 (C.D. Cal. 2010), and must be severe enough to interfere with the ability to work. Osenbrock v. Apfel, 242 F.3d

1157, 1164 (9th Cir. 2001). In this case, Plaintiff's treating physician specifically found that medication side effects affected Plaintiff's judgment to the point where it would interfere with her ability to work, a medical finding that needs to be disputed factually or, if not, incorporated into Plaintiff's RFC limitations.

The ALJ also discounted Dr. Carden's opinion because it was inconsistent with "Claimant's own descriptions of her functional abilities." (AR 30.) The ALJ, however, does not cite to any evidence to support this conclusory opinion. Earlier in the decision, the ALJ reports that Claimant had trouble sleeping because of pain; she has difficulty with personal grooming and meal preparation, cannot hold household appliances and tires easily. (AR 29.) She has difficulty maintaining attention for more than 15-30 minutes before feeling excruciating pain. (AR 29.) The ALJ found Claimant lives alone and drives and works on craft projects and operates a computer. (AR 29.) These daily activities are not necessarily inconsistent with Plaintiff's alleged symptoms and would not satisfy the clear and convincing test, Smolen, 80 F.3d at 1283-84, and certainly would not undermine Dr. Carden's opinion.

The ALJ failed to provide specific legitimate reasons supported by substantial evidence for discounting the opinions of Dr. Carden and Dr. Edelman. Because the record is not fully developed, the Court will not credit their opinions yet but remand for further proceedings, including further development of the record. The ALJ's RFC is not supported by substantial evidence.[1]

**II. THE ALJ'S RFC PRECLUDES WORK AS AN APPOINTMENT CLERK**

The VE testified that Plaintiff could perform the representative occupation of appointment clerk (DOT 237.367-010), which is a sedentary and semi-skilled job. (AR 32.) The ALJ accepted this testimony as consistent with the Dictionary of Occupational

---

[1] Plaintiff also challenges the ALJ's adverse credibility determination. To some extent the Court has addressed the factors proffered by the ALJ herein to discount Plaintiff's credibility but the Court sees no need to resolve the credibility issue definitively now because the record needs further development of the medical evidence that would affect the credibility analysis.

Titles ("DOT"). The appointment clerk job, however, is a Reasoning Level 3 occupation. (DOT 237.367-010.) The ALJ's RFC precludes Reasoning Level 3 jobs.

The ALJ found Plaintiff had the medically determinable mental impairment of depression. (AR 25.) The ALJ also found Plaintiff had mild restrictions in activities of daily activities and moderate restrictions in social functioning and with regard to concentration, persistence and pace. (AR 27.) Accordingly, the ALJ included in her RFC assessment limitations to "simple work tasks with simple one to two-step instructions" and only occasional interaction with supervisors, co-workers, and the general public. (AR 28.)

In assessing these limitations, the ALJ gave "great weight" to the opinion of consulting psychiatrist Dr. Suzanne Dupee. (AR 31, 270-276.) She diagnosed plaintiff with major depressive disorder. (AR 29, 274.) Dr. Dupee found Plaintiff was not impaired in the ability to understand, remember, and carry out simple one or two-step job instructions. (AR 31, 275.) Otherwise, Dr. Dupee opined Plaintiff was moderately impaired in the ability to work. (AR 31, 274, 275.) She also noted that Claimant was not under the care of a psychiatrist due to a lack of medical insurance.[2] (AR 271.) The Court also gave moderate weight to State reviewing psychiatrist Dr. Stanley Gold who diagnosed depression. (AR 31, 286.) He found Plaintiff was able to understand, remember and follow simple instructions and was capable of simple repetitive tasks. (AR 31, 293.) Based on these two assessments, the ALJ's RFC limits Plaintiff to "simple work tasks with simple one to two-step instructions."

A limitation of two steps of instruction corresponds to Level 1 reasoning. Grigsby v. Astrue, 2010 WL 309013, at *2 (C.D. Cal. Jan. 22, 2010) ("The restriction to jobs involving no more than two-step instructions is what distinguishes Level 1 reasoning

---

[2] The ALJ notes there is no evidence Plaintiff sought mental health treatment (AR 29) but never mentions Dr. Dupee's observation Plaintiff had no insurance. Inability to pay for treatment is not an appropriate basis for denying benefits. Gambler v. Chater, 68 F.3d 319, 322 (9th Cir. 1995).

from Level 2 reasoning."); see also Murphy v. Astrue, 2011 WL 124723, at *6 (C.D. Cal. Jan. 13, 2011); Burns v. Astrue, 2010 WL 4795562, at *8 (C.D. Cal. Nov. 18, 2010) (three and four-step instructions consistent with Reasoning Level 2 jobs). By comparison, a simple repetitive tasks limitation has been held consistent with both Reasoning Level 1 (one and two-step instructions) and Reasoning Level 2 (three and four-step instructions); Chavez v. Astrue, 2009 WL 5172857, at *7 n.10 (C.D. Cal. Dec. 21, 2009); see also DICOT App. C. Although the Ninth Circuit has not addressed the issue yet, district courts in this Circuit consistently have held that a limitation to simple, repetitive tasks is inconsistent with Reasoning Level 3 jobs. Hamlett v. Astrue, 2012 WL 469722, at *4 (C.D. Cal. Feb. 14, 2012) (Reasoning Level 3 jobs inconsistent with simple repetitive non-public tasks); Grimes v. Astrue, 2011 WL 164537, at *4 (C.D. Cal. Jan. 18, 2011); Carney v. Astrue, 2010 WL 5060488, at *4 (C.D. Cal. Dec. 6, 2010); Smith v. Astrue, 2011 WL 2749561, at *5 (C.D. Cal. Jul. 13, 2011); Bagshaw v. Astrue, 2010 WL 256544, at *5 (C.D. Cal. Jan. 20, 2010); McGensy v. Astrue, 2010 WL 1875810, at *3 (C.D. Cal. May 11, 2010); Tich Pham v. Astrue, 695 F. Supp. 2d 1027, 1032 n.7 (C.D. Cal. 2010); Etter v. Astrue, 2010 WL 4314415, at *3 (C.D. Cal. Oct. 22, 2010); Pak v. Astrue, 2009 WL 2151361, at *7 (C.D. Cal. Jul. 14, 2009); Tudino v. Barnhart, 2008 WL 4161443, at *11 (S.D. Cal. Sep. 5, 2008) ("Level two reasoning appears to be the breaking point for those individuals limited to performing only simple, repetitive tasks."); Squier v. Astrue, 2008 WL 2537129, at *5 (C.D. Cal. Jun. 24, 2008) (Reasoning Level 3 inconsistent with simple, repetitive work).

Based on the above authorities, the limitation to simple one to two-step instructions assessed by Dr. Dupee and included in the ALJ's RFC would limit Plaintiff to Reasoning Level 1 jobs. Dr. Gold's limitation to simple, repetititve tasks would limit Plaintiff to Reasoning Level 2 jobs. Reasoning Level 3 jobs like the appointment clerk position would be precluded under either limitation. Thus, the ALJ's finding that the VE's testimony was consistent with the DOT (AR 32) was not correct. There was a variation and the VE failed to explain that variation as was required. SSR 00-4p; Massachi v.

Astrue, 486 F.3d 1149, 1153 (9th Cir. 2007).  Indeed, the ALJ failed to inquire of the VE whether there was any variation from DOT.  Nor can it be said that the variation was harmless for the reasons already stated.  Id. at 1154 n. 19.

      The Commissioner nonetheless argues that a limitation to simple repetitive tasks is not necessarily inconsistent with Level 3 reasoning and one must look to the whole record to make that determination.  Thus, the Commissioner observes Plaintiff is college educated and has worked as a pharmacy tech, and should be able to handle a Reasoning Level 3 job as an appointment clerk.  This argument, however, does not appear in the ALJ decision and cannot be considered here.  Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003).  The Court also notes the ALJ did not impose a simple repetitive tasks limitation (Reasoning Level 2) but a limitation to simple one and two-step instructions (Reasoning Level 1), which is more restrictive.  In any event, the Commissioner's argument is plainly contrary to extensive case authority in this Circuit.  Additionally, the limitations assessed by Dr. Dupee, Dr. Gold and the ALJ derive only from her mental impairment of depression.  No limitations have been assessed due to pain and medication side effects which Dr. Carden has said affect her judgment and attention.  Even considering the record as a whole as the Commissioner urges, Plaintiff's pain, medication and side effects and depression more than offset the background factors cited by the Commissioner in determining what jobs Plaintiff can perform.

      Additionally, the record needs to be developed further regarding the ALJ's RFC limitation to occasional interaction with supervisors, co-workers and the general public.  (AR 28.)  The DOT description (237.367-010) appears to make "dealing with people" a central aspect of the appointment clerk job.  Indeed, the DOT summary of job functions demonstrates as much:

> Schedules appointments with employer or other employees for clients or customers by mail, phone, or in person . . . May telephone or write clients to remind them of appointments . . . May receive callers . . . May operate switchboard.

1  These job functions do not appear to involve just occasional interaction with people.
2  There is no specific discussion of this limitation in the record and as noted above the
3  ALJ failed to ask the VE if there were any variations from the DOT.  On this record, the
4  Court cannot determine whether the ALJ properly relied on the VE's testimony.
5  Massachi, 486 F.3d at 1154.

* * *

The ALJ's rejection of the opinions of Dr. Carden and Dr. Edelman is not supported by specific, legitimate reasons supported by substantial evidence.  The ALJ's RFC is not supported by substantial evidence.  The ALJ's nondisability determination is not supported by substantial evidence.

## ORDER

IT IS HEREBY ORDERED that Judgment be entered reversing the decision of the Commissioner of Social Security and remanding this case for further proceedings in accordance with this Memorandum Opinion and Order and with law.

DATED: December 18, 2013

                */s/ John E. McDermott*
                JOHN E. MCDERMOTT
                UNITED STATES MAGISTRATE JUDGE